## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIM MAGHAREH, ) <br> 3307 Acorn Wood Way ) <br> Houston, TX 77059 ) <br> ) <br> and ) <br> ) <br> BESTCARE LABORATORY ) <br> SERVICES LLC, ) <br> 202 N. Texas Ave., Suite 100 ) <br> Webster, TX 77598 ) <br> ) <br>      Plaintiffs, ) <br> ) <br>      v. ) <br> ) <br> ALEX AZAR, ) <br> in his official capacity as ) <br> SECRETARY, DEPARTMENT OF ) <br> HEALTH AND HUMAN SERVICES ) <br> 200 Independence Ave., SW ) <br> Washington, DC 20201 ) <br> ) <br> and ) <br> ) <br> DANIEL R. LEVINSON ) <br> in his official capacity as INSPECTOR ) <br> GENERAL, DEPARTMENT OF HEALTH ) <br> AND HUMAN SERVICES ) <br> 300 Independence Ave., SW ) <br> Washington, DC 20201 ) <br> ) <br>      Defendants. ) | Civil Action No. 18-1971 |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiffs Karim Maghareh, Ph.D., and BestCare Laboratory Services, LLC ("BestCare")

(collectively "Plaintiffs") file this complaint against Defendants Alex Azar, Secretary of the United

States Department of Health and Human Services ("HHS"), in his official capacity, and Daniel R.

Levinson, Inspector General of the Department of Health and Human Services (the "IG"), in his official capacity, to restrain and enjoin Defendants from terminating Plaintiffs' right to participate in Federal health care programs pending the duration of Plaintiff's administrative appeal to the Departmental Appeals Board ("DAB") of the HHS and, if necessary, further review by the United States District Court as authorized by the Social Security Act.

Injunctive relief is necessary as a procedural safeguard to remedy the lack of procedural due process in violation of Plaintiffs' constitutional rights and statutory rights under the Administrative Procedure Act.  Absent an injunction, the erroneous exclusion of Plaintiffs will result in the deprivation of Plaintiff's protectable interests in participating in Federal health care programs and will cause crippling and irreparable harm to Plaintiffs, the 180 employees of Plaintiffs, and the thousands of elderly patients that Plaintiffs serve in their medical testing business.  Accordingly, an injunction that allows Plaintiffs to exhaust their pending administrative and judicial appeals on the merits is warranted under the particular facts of this case.

## I.     INTRODUCTION

1.      Plaintiff Karim Maghareh is the owner and CEO of BestCare Laboratory Services, LLC.  Together, they seek an order enjoining their exclusion from participation in Federal health care programs, including but not limited to Medicare.

2.      Plaintiffs have protected property interests in Medicare reimbursements and their participation in Federal health care programs as approved, enrolled providers with the Centers for Medicare & Medicaid Services ("CMS").  Defendants are attempting to erroneously deprive Plaintiffs of their right to participate in Federal health care programs, and consequently their livelihoods and, in the case of BestCare, its ongoing existence.

3.      On August 17, 2018, an Administrative Law Judge ("ALJ") of the Departmental

Appeals Board ("DAB") of the HHS issued his order excluding Plaintiffs from the federal health care programs for 15 years under section 1128(b)(7) of the Social Security Act (the "Act") (42 U.S.C. § 1320a-7(b)(7)).

4.     This decision, if not stayed, will almost immediately put BestCare out of business and end Dr. Maghareh's career. The decision is based on an implausible reading of the regulations promulgated by CMS

5.     Plaintiffs' exclusion is effective as of the date of the ALJ's decision.  42 C.F.R. § 1001.2003.

6.     The Code of Federal Regulations provides that "[a]ny party may appeal the initial decision of the ALJ to the DAB by filing a notice of appeal with the DAB within 30 days of the date of service of the initial decision."  42 C.F.R. § 1005.21(a).  Plaintiffs plan to timely perfect their appeal on the merits to challenge the ALJ's decision to uphold the exclusion.

7.     However, the C.F.R. does not provide for a stay of the exclusion pending further appeal by Plaintiffs.  Given this lack of due process—and the resulting irreparable harm—injunctive relief staying the exclusion pending the completion of Plaintiffs' appeal (and available judicial review) is a necessary and critical safeguard to prevent further due process violations and any associated deprivation of Plaintiffs' property interests in participating in Federal health care programs and obtaining reimbursements from Medicare and Medicaid for the services BestCare and Dr. Maghareh provide to over twenty thousand patients in nearly two hundred nursing homes and hospitals around the state of Texas.

8.     Absent injunctive relief, Plaintiffs and their patients will suffer substantial and irreparable harm.  Plaintiffs will not be able to continue to treat the significant number of Medicare and Medicaid patients they now serve, including those whose blood is tested daily by BestCare.

As several physicians and health care administrators have attested, BestCare provides unique, vital, and high-quality medical testing services in communities where there are no suitable alternatives. Without Plaintiffs providing these services, Medicare and Medicaid patients in Texas will lose reasonable and timely access to important testing services. As a result, their health and well-being could be jeopardized.

9.    This likely and devastating harm that will result if injunctive relief is denied pending Plaintiffs' administrative appeal overwhelmingly outweighs any purported interests of Defendants to the contrary.  As Defendants are well aware, the allegations upon which Plaintiffs' exclusion is based occurred in 2009 and early 2010.  In fact, Defendants have never contended that Plaintiffs have committed any wrong-doing or violation of law or regulation in *over eight years*. Consequently, neither Defendants nor anyone else would suffer harm from an injunction pending Plaintiffs' full merits appeal of the exclusion to the DAB and further judicial review as provided by Statutes.

10.    Plaintiffs are not asking this Court to rule on the merits of the exclusion.  Rather, Plaintiffs simply request an injunction to maintain the status quo such that they can continue to operate their business while pursuing their full appellate recourse, including an administrative appeal to the DAB and subsequent judicial review as permitted under the Social Security Act.

11.    As discussed above, Plaintiffs will timely perfect and pursue their appeal.  They have 30 days from the transmission of the ALJ's decision (August 17, 2018) to file their notice of appeal and merits brief, and they intend to do so within, and likely in advance of, that timeframe.

12.    Accordingly, under the specific and particular facts of this case, an injunction is justified to prevent an erroneous deprivation of Plaintiffs' property and liberty interests and the corresponding immediate and irreparable harm to Plaintiffs, their employees and their patients that

would result.

## II.   BACKGROUND

### A. THE IG'S NOTICE OF EXCLUSION AND THE EXCLUSION HEARING

13.    In a letter dated August 21, 2015, the IG served on Plaintiffs a Notice of Intent to Exclude Karim A. Maghareh and BestCare Laboratory Services, LLC, from participation in Federal health care programs pursuant to 42 U.S.C. § 1320a-7(b)(7) for a period of 15 years.

14.    The IG's purported basis for exclusion was Plaintiffs' submission of 571 claims for mileage travel reimbursement from August 21, 2009 through January 26, 2010 (the "Five-Month Period") that the IG contended were false or fraudulent.

15.    On October 19, 2015, Plaintiffs timely requested a hearing in front of an ALJ within HHS.  That hearing was held from March 26-28, 2018 in Washington, DC.

### B. THE SOUTHERN DISTRICT OF TEXAS CASE IN FRONT OF JUDGE LYNN HUGHES

16.    Prior to the IG initiating its exclusion proceeding against Plaintiffs, a competitor of BestCare, Richard Drummond, filed a *Qui Tam* action against Plaintiffs in the United States District Court for the Southern District of Texas in front of District Judge Lynn Hughes in 2010 (the "S.D. Tex. Case").  This case, *United States ex rel. Drummond v. BestCare Laboratory Services, L.L.C. et al.*, No. 4:08-CV-2441 (S.D. Tex) is currently on appeal to the Fifth Circuit Court of Appeals.

17.    The S.D. Tex. Case similarly concerns alleged wrongful overbilling for travel reimbursements to the Medicare program by BestCare related to the transportation of laboratory specimens for testing under certain reimbursement codes.

18.    Before the United States intervened in the S.D. Tex. Case filed by Drummond, Dr. Maghareh voluntarily met with government officials, including attorneys from both the

Department of Justice and the IG in January 2010, and truthfully disclosed all of BestCare's Medicare billing practices.

19.     Indeed, Dr. Maghareh and BestCare had repeatedly disclosed their billing methods, including practices with respect to mileage reimbursements, to CMS officials to seek approval in the years before the S.D. Tex. Case or the I.G. Proceeding began.

20.     The United States intervened in the litigation in November 2011, seeking to recover treble damages and civil penalties under the False Claims Act and damages under common law theories of fraud, payment by mistake, and unjust enrichment.

21.     Dr. Maghareh and BestCare timely requested a jury trial.

22.     Over the course of the litigation in the S.D. Tex. Case, Dr. Maghareh and BestCare repeatedly reiterated their request for their Seventh Amendment Right to a jury trial from the district court, including in open court pleas to Judge Hughes. Their pleas fell on deaf ears. Judge Hughes pre-judged the case from day one, truncating discovery, and ultimately issuing summary judgment rulings ignoring all of the evidence in Plaintiffs' favor.

23.     On August 21, 2014, the district court decided, on summary judgment, that BestCare was liable for payments of approximately $10 million in overbilling under theories of unjust enrichment and payment by mistake.  This first of many summary rulings followed several case management orders where the Court had limited discovery and tailored the parties' pretrial efforts to summary disposition.

24.     Along the way, and again by summary disposition, the district court found that Dr. Maghareh was personally liable for the funds the government paid BestCare by mistake.

25.     Although the district court was predisposed to summary resolution from the beginning, the Court also repeatedly indicated on the record that fraud was not the appropriate

judgment in the case because of evidence regarding Plaintiffs' contacts with the government to clarify billing confusions and seek guidance.

26.     However, instead of allowing a jury of his peers to decide whether Plaintiffs knowingly submitted false claims to CMS, the district court simply sat on the case for nearly 8 years. This delay eventually prompted a Mandamus ruling whereby the Fifth Circuit admonished that "the district court's delay in adjudicating this case is simply inexcusable . . . ." *In re United States ex rel. Drummond*, 886 F.3d 448, 449 (5th Cir. 2018).

27.     After this Mandamus ruling, which was widely circulated in legal publications in the Houston, TX area, the district court reversed course and imposed a $30 million fraud summary judgment against BestCare and Dr. Maghareh without allowing them any opportunity to confront their accusers in front of a jury of their peers.  *United States ex rel. Drummond v. BestCare Laboratory Services, L.L.C. et al*., No. 18-20501, slip op. at 2 (5th Cir. July 27, 2018).

28.     In an unusual move, the Fifth Circuit Court of Appeals, on a motion by Plaintiffs in this case, stayed the execution of the district court's summary judgment rulings, pending full briefing on whether a stay is appropriate.

29.     These summary dispositions in the S.D. Tex. Case ignored or mischaracterized voluminous evidence in the record regarding BestCare's lack of knowledge or intent in any allegedly wrongful over-billings.  The district court's rulings also overlooked all evidence of BestCare's efforts to seek guidance from relevant authorities and cast aside the entire evidentiary record developed in the aforementioned co-pending I.G. proceeding. It further contradicted the Fifth Circuit Court of Appeal's frequent admonishment that a finding of liability under a fraud-like statute such as the False Claims Act, where scienter is a necessary element, must be decided by the trier of fact.

30.     By disposing of the case through summary disposition, Judge Hughes prevented Plaintiffs from presenting witnesses or live testimony related to fact issues such as scienter and denied any opportunity to cross-examine their accusers.

### C.   AFTER THE FCA JUDGEMENT ENTERED IN THE S.D. TEX. CASE, THE ALJ IN THE HHS PROCEEDING ISSUES AN EXCLUSION DECISION THAT LARGELY MIMICS THE REASONING OF THE FCA SUMMARY JUDGMENT OPINION.

31.     As soon as the FCA Judgment issued in the S.D. Tex. Case, the I.G. filed the decision with the ALJ presiding over the HHS Proceeding. Soon after, the ALJ requested briefing on the impact of the S.D. Tex. FCA judgment on the HHS Proceeding, despite the fact that evidence in the HHS Proceeding had closed after a full evidentiary hearing.

32.     Not surprisingly, the ALJ in the HHS proceeding issued a decision that repeatedly references, and largely adopts the logic of, Judge Hughes' summary judgment findings in the S.D. Tex. Case.

33.     The ALJ Exclusion Decision, based in large part on the flawed summary judgment rulings in the S.D. Tex. Case, inaccurately reads the relevant billing guidelines in contravention to longstanding principles of statutory and regulatory construction recognized by the Supreme Court of the United States, this Court, and all Circuit Courts around the country.

34.     Indeed, the ALJ imposed the harshest exclusion requested by the I.G., fifteen years, a longer time than BestCare had been in business at the time the exclusion proceeding was commenced. The ALJ justified the draconian length of this Exclusion Decision based almost entirely on the summary judgment rulings in the S.D. Tex. Case where Plaintiffs were never afforded a trial. Such reliance on, and adoption of, Judge Hughes' flawed summary decisions constitute error and deprivation of due process to Plaintiffs.

35.     The Exclusion decision becomes immediate upon issuance. Plaintiffs have no recourse to stay the exclusion pending the exhaustion of their appellate remedies to the DAB or to

the federal district court, as prescribed by the C.F.R.

### III.    PARTIES

36.    Plaintiff Karim Maghareh is the Chief Executive Officer of BestCare Laboratory Services, LLC and resides in the State of Texas.

37.    Plaintiff BestCare Laboratory Services, LLC is a Texas limited liability company that operates a medical testing laboratory that performs tests for patients of nursing homes, hospitals, and medical practitioners in and around Texas.

38.    Defendant Alex Azar is the Secretary of HHS, a federal governmental agency located in Washington, DC, and is sued in his official capacity only.

39.    Daniel R. Levinson is the Inspector General of the HHS, an office located in Washington, DC, and is sued in his official capacity only.

### IV.    JURISDICTION AND VENUE

40.    This Court has jurisdiction over this action pursuant to the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, 5 U.S.C. § 702, and 28 U.S.C. § 1331.

41.    Venue is proper in this court under 28 U.S.C. §§ 1391(b)(2), (e)(1) because, *inter alia*, defendants, agencies and employees of agencies of the United States, reside within this judicial district, and a substantial part of the events giving rise to the claims herein occurred within this judicial district.

42.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under the Constitution, law, and statutes of the United States.

**A. PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES IN SEEKING A STAY**

OF THE EXCLUSION.

43.     As discussed above, Plaintiffs plan to appeal the Exclusion Decision to the DAB and properly exhaust their administrative appellate remedies.

44.     But with respect to a stay, Plaintiffs have exhausted all of their administrative remedies with respect to the relief sought herein such that this Court can hear this request for relief.

45.     The C.F.R., which provides the procedure that governs the HHS Proceeding and appeals, does not have a mechanism to allow a stay the decision of an ALJ upholding a participant's exclusion from Federal health care programs pending an appeal to the DAB or subsequent judicial review as provided by the Social Security Act.  Whereas other ALJ decisions, including decisions to impose or uphold civil monetary penalties, are stayed during the pendency of an appeal to the DAB, exclusion decisions are not.  42 C.F.R. § 1001.2003.

46.     Given that Plaintiffs have no further recourse to administratively seek the stay of their exclusion from participation in Federal health care programs pending its appeal to the DAB and in seeking judicial review, Plaintiffs have exhausted all of their administrative remedies, and can rightfully petition this court for the relief requested herein under 42 U.S.C. § 405 to the extent that it applies to this complaint.

**B.  ADMINISTRATIVE CHANNELING AND EXHAUSTION ARE INAPPLICABLE TO THIS CONSTITUTIONAL CLAIM SEEKING ONLY INJUNCTIVE RELIEF.**

47.     With respect to subject matter jurisdiction, the administrative channeling and exhaustion requirements under 42 U.S.C. § 405 are inapplicable to the unique issues and narrow injunctive relief sought by Plaintiffs in this case.  Only actions seeking *review and reversal* of the "findings of fact or decision of decisions of the Secretary" (i.e., the substantive merits of the exclusion) are subject to administrative channeling and exhaustion.  *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976) (finding subject matter jurisdiction over similar due process claims against

federal governmental entities where administrative remedies for merits determinations had not been exhausted).

48.     In this case, Plaintiffs make only a limited *procedural* challenge on constitutional due process grounds, and the only relief requested is a temporary restraining order and injunction pending the completion of Plaintiffs' appeal to the DAB and further judicial review authorized by the Social Security Act.  Plaintiffs are not asking this Court to review or reverse the findings of exclusion.  Consequently, administrative channeling and exhaustion are inapplicable.

49.     Administrative channeling only applies to Plaintiffs' underlying substantive appeal, which will seek review and reversal of the merits determination to uphold the IG's exclusion of Plaintiffs from participation in Federal health care programs.  Consequently, because Plaintiffs have initiated the process under § 405 by seeking review of the exclusion determination by an HHS ALJ under 42 C.F.R. § 1005.2 and, ultimately, seeking appeal to the DAB under 42 C.F.R. § 1005.21.  The underlying appeal is wholly independent of, and will be undisturbed by, this action.

## C. ANY REMAINING ADMINISTRATIVE EXHAUSTION REQUIREMENTS SHOULD BE WAIVED PURSUANT TO *MATHEWS V. ELDRIDGE*.

50.     Even if administrative exhaustion applied to this limited action for injunction, which it does not, and even if this Court finds that Plaintiffs have not fully exhausted their administrative remedies with respect to seeking a stay of exclusion, any remaining requirements under 42 U.S.C. § 405 should be waived pursuant to *Mathews v. Eldridge*, 424 U.S. 319 (1976), as applied to the circumstances in this case.

51.     In *Eldridge*, the Supreme Court explained that there are waivable and non-waivable components to administrative exhaustion under 42 U.S.C. § 405.  The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted.  The nonwaivable element is the requirement that a claim shall be presented to the Secretary.  *Eldridge*

at 328.

52.     Plaintiffs have already satisfied the non-waivable presentment element of administrative exhaustion.  Plaintiffs presented their request for a hearing and conducted an evidentiary hearing in front of an ALJ.  Further, Plaintiffs plan to file and perfect their appeal to the DAB timely as prescribed in the CFR, such that the administrative appeals process is and will be underway.

53.     Because the nonwaivable portion of administrative exhaustion is satisfied in this case, whether the remaining exhaustion requirements should be waived hinges on whether a two-part test is met.  If the Plaintiff's procedural challenge before the Court is "entirely collateral" to plaintiff's substantive claim submitted for administrative review *and* the plaintiff has raised "at least a colorable claim that . . . an erroneous termination would damage [plaintiff] in a way not recompensable through retroactive payments" then exhaustion can be waived.  *Eldridge*, 424 U.S. at 331.

54.     To the extent the exhaustion requirement applies, Plaintiffs have satisfied this two-part test.  In this action, Plaintiffs have brought a constitutional claim on *procedural* due process grounds and are only seeking purely injunctive relief—a temporary stay of the exclusion pending the administrative appeal.  Consequently, this action is entirely collateral to the underlying substantive claim to be administratively appealed, which seeks review and reversal of the merits of the exclusion decision.

55.     The second prong of the waiver analysis simply requires that Plaintiff's procedural challenge rest on a "colorable claim that . . . an erroneous termination would damage [plaintiffs] in a way not recompensable through retroactive payments." *Eldridge*, 424 U.S. at 331. In other words, Plaintiffs must make a colorable claim of irreparable harm.

56.     In this case, Plaintiffs have undoubtedly satisfied this requirement.  As shown throughout this complaint, if Plaintiffs are excluded prior to a full exhaustion of their administrative and judicial appeals, the impact will be devastating.   Plaintiff Maghareh's livelihood will have been taken away from him.  BestCare will be forced to shut its doors, losing nearly all of its clients and revenue and laying off over 180 employees.  BestCare's patients, a highly vulnerable population in need of fast, accurate medical testing, will be left to find other providers where, in many instances, do not exist.  BestCare and Maghereh's reputations will be irreparably tarnished.

57.     Perhaps most critical among these harms are those that Plaintiffs' patients will suffer.  The effect of an exclusion could result in serious physical harm.  Plaintiffs' patients are a highly vulnerable, largely elderly population that reside in Texas, and in some cases in remote areas in Texas.  Many of BestCare's clients have attested that there are no suitable replacement providers for the services that BestCare provides.  Closure would increase pressure on an already strained medical community that cannot meet the needs of the patients BestCare serves.

58.     Moreover, an erroneous exclusion prior to the resolution of Plaintiffs' appeal will result in a death sentence to BestCare's business and Dr. Maghareh's livelihood, including a loss of jobs for over 180 employees.  Plaintiffs would not have the financial ability to pursue an appeal to its conclusion, but even if Plaintiffs could and did obtain post-deprivation review, it would be too late for the business to survive.  Such financial damage and the harm to Plaintiffs' reputation would be irreparable and not compensable, such that Plaintiffs could never obtain full relief.

59.     Because Plaintiffs have satisfied all parts of *Eldridge* "entirely collateral" analysis, the remaining administrative exhaustion requirements are waived, and this Court has subject matter jurisdiction over this action.  *See Eldridge*, 424 U.S. at 331-32, n.12 (finding subject matter

jurisdiction over due process claim prior to analysis of merits of claim).

## V. THE VIOLATION OF PLAINTIFFS' CONSTITUTIONAL DUE PROCESS RIGHTS WARRANTS AN INJUNCTION PENDING THE ADMINISTRATIVE APPEAL PROCESS

60.     An injunction is warranted and necessary, under the particular facts of this case, as a procedural safeguard to prevent the erroneous deprivation of Plaintiffs' protected interest in participating in and receiving reimbursement from Federal health care programs without sufficient procedural due process.

61.     Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments.  *See Eldridge*, 424 U.S. at 332.  The fundamental requirement of due process is that a deprivation of a protected interest must be preceded by adequate notice and opportunity for response and be heard at a meaningful time and in a meaningful manner.  *Id.* at 332.  The purpose is not only to ensure abstract fair play to the individual," but also to "minimize substantively unfair or mistaken deprivations."  *Fuentes v. Shevin*, 407 U.S. 67, 70-71 (1972).

62.     Due process is determined by the specific nature and particular factual circumstances of the case at issue.  Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Eldridge*, 424 U.S. at 334 (citations omitted).

63.     To state a claim for procedural due process, a claimant must allege that (1) the claimant was or will be deprived of a protected interest; and (2) the claimant did not receive the

process to which it was/is entitled, such that full relief cannot be obtained through post-deprivation review.  *Id.* at 330-31.

64.     Under circumstances where the merits of a constitutional due process claim are weighed for injunctive purposes, Courts consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id.*

### A.  PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM

65.     Plaintiffs seek to protect their interest in continued participation in Federal health care programs, including associated benefits and reimbursements to which Plaintiffs are entitled by statute and/or provider agreements.

66.     Plaintiffs' rights to participation in Federal health care programs at issue fall under due process protection, as health care providers have constitutionally protected property interest in continued participation in Federal health care programs.  See *Eldridge*, 424 U.S. at 334. (interest in the continued receipt of federal benefits under the Social Security Act and related statutes is a statutorily created "property" interest protected by the Due Process Clause of the Fifth Amendment); *see also Patchogue Nursing Ctr. v. Bowen*, 797 F.2d 1137, 1144-45 (2d Cir. 1986), *cert. den.*, 479 U.S. 1030, 93 L. Ed. 2d 828, 107 S. Ct. 873 (1987) ("Health care providers have a constitutionally protected property interest in continued participation in the Medicare and Medicaid programs . . . ."); *Arriva Med. LLC v. United States HHS*, 239 F. Supp. 3d 266, 285 (D.D.C. 2017); *Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 10 (D.D.C. 1999).

67.     Defendants have failed to provide sufficient due process in enforcing their

exclusion of Plaintiffs.  Because of the particular lack of due process in this case, an injunction is necessary to prevent erroneous deprivation before Plaintiffs can receive the adequate process to which they are entitled—a full review of the exclusion through an administrative appeal and judicial review.  Accordingly, an injunction is sought as an additional procedural safeguard so that Plaintiffs may obtain fair and meaningful review through the administrative appeal process and subsequent judicial review, as codified in the C.F.R., before unjustified and irreparable harm occurs.

68.     Moreover, in relying on the summary dispositions by Judge Hughes, Defendants violated Plaintiffs' procedural due process rights.  In that case, as described above, Judge Hughes did not allow Plaintiffs to put on evidence or have a hearing in front of a jury to determine issues of fact such as Plaintiffs' intent – a required element of a False Claims Act case.

69.     In adopting parts of Judge Hughes' ruling and relying on them in upholding the exclusion, Defendants deprived Plaintiffs of their due process, because it relied on the dispositions that occurred where such due process standards, including a hearing on the merits, were never given or granted.

70.     Consequently, in addition to violating Plaintiffs' procedural due process rights in not allowing for a stay of the exclusion pending a full and final appeal on the merits of the exclusion proceeding and subsequent judicial review as allowed by statute, Defendants further violated Plaintiffs' rights by adopting or relying on dispositions made in a case where no due process existed.

71.     The validity of ALJ Thomas' appointment as an ALJ under the Appointments Clause and, consequently, his ability to preside over the Exclusion Hearing and issue his Exclusion

Decision is uncertain. [1]  Plaintiffs reserve the right to full briefing on the validity of ALJ Thomas'

appointment and ability to render his Exclusion Decision on appeal.

### B. Defendants Have Enacted Arbitrary and Capricious Regulations in Not Allowing a Mechanism to Stay the Plaintiffs' Exclusion.

72.     In addition to violating Plaintiffs' Procedural Due Process rights, Defendants have

also violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* by failing to

provide a manner or method by which Plaintiffs' can stay their exclusion during the pendency of

their administrative appeal and review process.

73.     Namely, in not allowing a manner or method by which Plaintiffs' can stay their

exclusion pending the outcome of their full and final administrative appeal as well as the judicial

review granted by the Social Security Act, Defendants actions are arbitrary and capricious.

### C. An Injunction is Warranted to Prevent Irreparable Harm to Plaintiffs, Patients, Employees, and Others.

74.     If Defendants are not restrained and enjoined pending the administrative appeal

process and related judicial review processes, termination of Plaintiffs from participation in

Federal health care programs will cause substantial irreparable harm to Plaintiffs, their patients,

employees, the community and surrounding region.

75.     An erroneous termination will cause fatal financial and reputational harm to

Plaintiffs.  BestCare will lose all revenue from Medicare and Medicaid.  The revenue from

Medicare and Medicaid represent a large and critical part of BestCare's business, and loss of that

revenue would be crippling.

76.     Likewise, Dr. Maghareh will lose the source of his livelihood and the company he

---

[1]     In *Lucia v. S.E.C.*, the Supreme Court found that S.E.C. Administrative Law Judges were "Officers of the United States" subject to the requirements of the Appointments Clause. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018).  The Supreme Court also stated that "[t]his Court has also held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id.* (citations omitted)

has built over the last fifteen plus years if he is not allowed a full appellate review on the merits before the exclusion goes into effect.

77.     In addition to crippling financial harm, an erroneous termination will cause Plaintiffs to suffer a loss of their reputation.  At present, Plaintiffs are important members of the Texas medical community, held in high esteem by their peers and patients for providing outstanding patient and testing services.  Plaintiffs' reputation would be unjustifiably and permanently harmed by an erroneous exclusion.

78.     Most critical, BestCare's patients will suffer substantial and irreparable harm if erroneous exclusion occurs.  BestCare will not be able to treat its significant number of Medicare patients, including those that use BestCare services every day.

79.     As medical providers have attested, BestCare serves patient populations that have no alternatives for reliable, accurate, and fast medical testing.  If BestCare is erroneously excluded, there are no other alternatives or providers who are able to provide these necessary, crucial services for the patient population BestCare serves.

**D.   NEITHER THE GOVERNMENT NOR ANY OTHER PARTY WILL SUFFER HARM RESULTING FROM A LIMITED INJUNCTION.**

80.     In contrast, neither the government nor anyone else will suffer harm from a limited injunction.

81.     There is no pressing justification to rush exclusion pending the outcome of the appeal process, especially given the risk that it is erroneous.  Exclusion of Plaintiffs is not based on deficiencies which bear on patient safety or care issues, nor are they based on allegations that are within the last eight years.  Rather, Plaintiffs exclusion is based on billing technicalities from confusing guidance issued by CMS, and no acts have occurred in the recent past.

82.     An injunction will also not delay or impact the remaining appeal procured, nor will

it impose any current or future burdens on Defendants.  An injunction would preserve the status quo pending the resolution of the appeal process, which will soon be underway and will be done so timely.  The appeal will require the exact same time and costs from all parties, whether an injunction is granted or not.

83.     Put simply, any purported interests of Defendants are weak and overwhelmingly outweighed by the probable and devasting harm which will result to Plaintiffs, their employees, and their patients absent an injunction.

**E.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR APPEAL OF THE EXCLUSION DECISION.**

84.     As discussed above, Plaintiffs unsuccessfully tried to obtain a trial by jury in the related Southern District Case.  Instead, Judge Hughes made summary determinations that morphed, without trial or jury, into a fraud judgment of over $ 30 million dollars.  In spite of Plaintiffs' seeking a jury determination of the issues, with special emphasis on fraud claims and alleged "knowledge" of fraudulent billing, Plaintiffs have been denied the opportunity to put on evidence in front of a finder of fact to resolve these fact issues.

85.     ALJ Thomas's decision was based in large part on Judge Hughes's summary decision. That decision, however, was obtained without the benefit of a full evidentiary hearing, fair consideration of the evidence, or any regard to Plaintiffs' desire to have a trial on the facts has precluded Plaintiffs from having the voluminous evidence heard by the finder of fact.

86.     As ALJ Thomas heard in the evidentiary hearing in this case, there is evidence that Plaintiffs proactively reached out to the Government time and again to seek clarification whenever it had billings questions or confusions.  All of that evidence was discounted by both Judge Hughes and, eventually, by ALJ Thomas in his Opinion.  Had a fair hearing been held on the merits, jurors or other fact finders, with the benefit of the full evidence, likely would have found differently

related to both (1) the issues at play in the S.D. Tex Case and (2) the exclusion proceeding in front of ALJ Thomas in the HHS.

87.     Indeed, both Judge Hughes and ALJ Thomas dismissed the plain and easy reading of the Medicare regulations under which they found that BestCare had knowingly submitted false claims and that justified exclusion of Plaintiffs, respectively.  Those regulations, which describe Code P9603 (under which the at-issue claims for reimbursement were submitted), stated as follows:

**Per Mile Allowance (P9603)**

- The minimum "per mile travel allowance" is 75 cents.  The per mile travel allowance is to be used in situations where the average trip to patients' homes is longer than 20 miles round trip, and is to be pro-rated in situations where specimens are drawn or picked up from non-Medicare patients in the same trip. – one way, in connection with medically necessary laboratory specimen collection drawn from homebound or nursing home bound patient; prorated miles actually traveled (carrier allowance on per mile basis); *or*

- The per mile allowance was computed using the Federal mileage rate plus an additional 44 cents a mile to cover the technician's time and travel costs.  Contractors have the option of establishing a ***higher per mile rate in excess of the minimum*** (75 cents a mile in cy 2000) if local conditions warrant it.  The minimum mileage rate will be reviewed and updated in conjunction with the clinical lab fee schedule as needed.  At no time will the laboratory be allowed to bill for more miles than are reasonable or for ***miles not actually traveled by the laboratory technician***.

88.     At all relevant times to the exclusion hearing or the Southern District Case, CMS maintained the disjunctive "or" at the end of the first bullet point, where the phrase "miles not actually traveled by the laboratory technician" only appears in the second paragraph where the Contractor has established a "higher per mile rate."

89.     Contrary to the law of the United States Supreme Court, this Court, and Circuit Courts around the country, both Judge Hughes *and* ALJ Thomas read the phrase "miles not actually traveled by the laboratory technician" to apply to instances other than those where a higher per

mile rate was established.  The Supreme Court has stated "[t]o read the next clause, following the word 'or,' as somehow repeating that requirement, even while using different words, is to disregard what 'or' customarily means.  As we have recognized, that term's ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings."  *Loughrin v. U.S.*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014).

90.     Simply put, both Judge Hughes and ALJ Thomas read and applied this provision in a manner contrary to well-established law and regulatory construction.  Consequently, on this purely legal issue (i.e., the meaning of the applicable guidance under which Plaintiffs submitted their allegedly fraudulent claims that form the basis of their exclusion), Plaintiffs have a high likelihood of success on the merits at the administrative appeal stage and any applicable judicial review.

91.     Notwithstanding the clear legal error made by both Judge Hughes and ALJ Thomas with respect to their interpretation of program guidelines, the summary judgment entered in the Southern District Case – which is currently on appeal – strains believability.  In that case, Judge Hughes first rule in 2013 on summary judgment that BestCare, and Dr. Maghareh, were liable for payments of approximately $10 million for overbilling, under the theories of unjust enrichment and payment by mistake.  This summary judgment ruling on liability followed several case management orders by which Judge Hughes had limited discovery and tailored the parties toward this summary disposition.  Indeed, Judge Hughes had told the parties to "ignore" the fraud charges, only then to rule, on summary judgment, that BestCare was liable for those payments in 2013 and then later treble those damages only after the Fifth Circuit issued a mandamus against Judge Hughes.

92.     This ruling following the mandamus, whereby BestCare and Dr. Maghareh became

liable for a judgment of over $ 30 million, was made in an order that cited not a single piece of evidence, contradicted statements by the Court throughout the entire pendency of the case, and ultimately found a "scheme" to defraud the government.

93.     Judge Hughes rejected a lengthy motion for reconsideration that included citations to the testimony adduced in the exclusion hearing in front of Judge Thomas was rejected in a single sentence order.

94.     Judge Hughes' summary rulings in this case are in stark contrast to those of ALJ Thomas, who denied both parties summary judgment prior to the evidentiary hearing on the exclusion.  Nonetheless, and in spite of the hearing on the merits, ALJ Thomas adopted, nearly wholesale, the rulings made by Judge Hughes without the benefit of a hearing in front of a jury.

95.     Consequently, when a forum such as the DAB or the district court reviews the record and evidence through the lens of an impartial finder of fact and arbiter of law, there is a high likelihood that any rulings or verdicts will favor Plaintiffs.

**F.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THIS COMPLAINT AND OBTAIN PRELIMINARY AND PERMANENT INJUNCTIONS.**

96.     As described above, Plaintiffs will suffer irreparable harm if injunction relief is not granted. Indeed, Defendants have little interest in not staying the exclusion of Plaintiffs from Federal health care programs pending the outcome of Plaintiffs administrative review and subsequent judicial review.

97.     Consequently, Plaintiffs have a high likelihood of success in obtaining a preliminary injunction and, ultimately, a permanent injunction.

98.     As described herein, Plaintiffs can show that without injunctive relief they will be irreparably harmed, that Defendants will not be harmed by the injunctive relief sought by Plaintiff, that the public interest weighs in the favor of granting the injunctive relief, and that Plaintiffs have

a high likelihood of success on the merits.

99.     The standards for proving a permanent injunction under Fed. R. Civ. Proc. 65 are the same, save that the party seeking the injunction most ultimately prove success on the merits. As described in this complaint, Plaintiffs are highly likely to meet these criteria, and thus are likely to succeed on the merits.


## VI.     COUNT I (Against Both Defendants)

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (FOR INJUNCTIVE RELIEF)

100.     Paragraphs 1-98 are incorporated by reference herein.

101.     The APA prohibits Defendants from implementing the Social Security Act in a manner that is contrary to law or that is arbitrary and capricious.  5 U.S.C. § 706(a).

102.     Defendants have purported to impose exclusion on Plaintiffs from federal health care programs under Section 1128(b)(7) of the Social Security Act, codified as 42 U.S.C. § 1320a-7(b)(7), based on its interpretation of agency guidelines and plaintiffs conduct with those guidelines, where such exclusion cannot be stayed pending the full and final administrative appeal or any judicial review.

103.     Consequently, by promulgating rules such that there was no possibility of staying an upholding of an exclusion finding pending the appeal process to the DAB (or further judicial review), Defendants have therefore exceeded their statutory authority, in violation of the APA.

104.     Plaintiffs have no other adequate remedy at law.

105.     Defendants implementation of their decision to exclude plaintiffs from Federal health care programs will cause substantial, imminent, and irreparable injury to plaintiffs.

## VII.    COUNT II (Against Both Defendants)

### VIOLATION OF PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS (FOR INJUNCTIVE RELIEF)

106.    Paragraphs 1-104 are incorporated by reference herein.

107.    The IG has violated plaintiffs' procedural due process rights by imposing exclusion under 42 U.S.C. § 1320a-7(b)(7) before allowing Plaintiffs to exhaust all of their rights to appeal Defendants unlawful actions.

108.    Plaintiff Maghareh has a protected liberty interest because immediate exclusion poses a grave threat to their current and future employment opportunities. Immediate exclusion puts Plaintiff Maghareh at serious risk of losing his livelihood.

109.    Plaintiff BestCare has a protected liberty interest because immediate exclusion poses a grave threat to its current and future existence as an operating enterprise, including its employment of over 180 individuals, and the services that it provides to patients around South Texas.

110.    Plaintiffs are on the verge of suffering immediate and irreparable harm through an erroneous deprivation of their liberty interest based solely on conduct that: (1) has not been finally adjudicated, after all appeals, to have been false under any of the standards set forth in the Social Security Act; and (2) will likely to have been found to be in compliance with applicable regulations issued by Governmental Agencies.

111.    Defendants' interest in immediate exclusion, by contrast, is arguably non-existent. The harm that Defendants may suffer from a delayed exclusion does not balance out the immediate and irreparable harm that Plaintiffs will suffer through their exclusion.  Indeed, Plaintiffs have not been accused of having committed *any* error in billing or other bad act for over eight years, and have complied with and passed each audit it has been subject to. Thus, the health and safety of

beneficiaries of Federal health care programs cannot, and are not, at risk from Plaintiffs continued operation as providers of medical testing services.

112.    Defendants implementation of its decision to exclude Plaintiffs without allowing them full recourse to exhaust all appellate avenues will cause substantial, imminent, and irreparable injury to Plaintiffs.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, in light of the above and foregoing, Plaintiffs pray that this Court grant the following relief:

a) That the Court issue a temporary restraining order and, ultimately, a preliminary injunction pending the duration of Plaintiffs' appeal (including regulatorily-provided administrative appellate review and statutorily provided subsequent judicial review) and any other pre-exclusion hearing necessary to afford constitutional due process to Plaintiffs, which prohibits Defendants from:

   i. Excluding Plaintiffs from participation in Federal health care programs.

b) That, to the extent necessary and appropriate, the Court grant a permanent injunction following the aforementioned appeal processes; and

c) For such other and further relief this Court deems just and proper.

Respectfully Submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.**

_____
Justin Rowinsky
D.C. Bar No. 1028756
John Zavitsanos*
Texas Bar No. 22251650
Weining Bai*
Texas Bar No. 24083782
Kyle Poelker*
Missouri Bar No. 65586
Southern District Bar
1221 McKinney, Ste. 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Telecopier: (713) 655-0062
jrowinsky@azalaw.com
jzavitsanos@azalaw.com
wbai@azalaw.com
kpoelker@azalaw.com

* Motions for Admission _Pro Hac Vice_ submitted
contemporaneously herewith

**_Counsel for Plaintiff
Karim A. Maghareh_**

_/s/ Eric J.R. Nichols_____
Eric J.R. Nichols*
Texas Bar No. 14994500
BECK | REDDEN LLP
515 Congress Ave., Suite 1900
Austin, Texas 78701
Tel: (512) 708-1000
Fax: (512) 708-1002
enichols@beckredden.com

Jon D. Stephenson*
Texas Bar No. 24041973
Jon Stephenson Law, P.C.
111 W 15th St
Houston, TX 77008
(832) 930-0559 (telephone)
(713) 869-9912 (facsimile)
jon@jonstephensonlaw.com

* Motions for Admission *Pro Hac Vice* submitted contemporaneously herewith

***Counsel for Plaintiff***
***BestCare Laboratory Services, LLC***